IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT FAGAN, SHAWN HAGENAH,
BRADLEY A. JENSEN, DANIEL THOMAS,
AND JOSEPH G. STEPHANI,

                Plaintiffs,                OPINION AND ORDER

    v.

                                                  20-cv-685-wmc

SUPERIOR REFINING CO., LLC,

                Defendant.

---

       This lawsuit is one of a series filed after an explosion at the Husky Superior Refinery in April of 2018.[1] In this case, plaintiffs Robert Fagan, Shawn Hagenah, Bradley A. Jensen, Daniel Thomas, and Joseph G. Stephani allege that they were working at the Refinery under a third-party contract when the explosion occurred. They further claim that the explosion and their resulting injuries were caused by defendant Superior Refining Co., LLC's negligence, strict liability for extrahazardous activities, and violation of Wis. Stat. § 101.11 (the "safe place statute").

       This court dismissed plaintiffs' original lawsuit without prejudice for failure to state a claim. Shortly after dismissal, however, plaintiffs filed a new action, which defendant again sought to dismiss. After briefing was completed on defendant's motion to dismiss, plaintiffs further moved to amend their complaint, claiming that "between this court's order dismissing plaintiffs' complaint in the earlier action and defendant's reply brief in

---

[1] *See Bruzek v. Husky Energy, Inc.*, 18-cv-697-wmc; *Mayr v. Husky Energy, Inc.*, 18-cv-917-wmc; *Eliason v. Superior Refining Company LLC*, 19-cv-820-wmc; *Fagan v. Superior Refining Co. LLC*, 19-cv-462-wmc; *Moore v. Husky Energy, Inc.*, 20-cv-632-wmc; *Bell-Yellin v. Superior Refining Co. LLC*, 20-cv-631-wmc; *Wysocki v. Superior Refining Co. LLC*, 21-cv-6-wmc.

support of its 12(b)(6) motion, every flaw in plaintiffs' complaint in the instant action will have been exposed." (Pls.' Br. (dkt. #23) 2 (capitalization omitted).)

For the reasons that follow, the court will grant plaintiffs' motion to amend. (Dkt. #22.) The court will also deny defendant's motion to dismiss (dkt. #9) as being directed at a non-operative complaint, although because defendant largely incorporated its arguments for dismissal in its opposition brief to plaintiffs' motion to amend, as a practical matter the court has also considered and rejected the substantive arguments made by defendant in its prior motion to dismiss. Finally, the court will take up a motion to intervene by proposed intervenor Travelers Indemnity Company of Connecticut. (Dkt. #29.)

BACKGROUND

**A. Allegations in Plaintiffs' Proposed Amended Complaint**

In early 2018, defendant scheduled a "shut down" of the Husky Superior Refinery in Superior, Wisconsin, for maintenance and installation of equipment. (Proposed Am. Compl. (dkt. #22-1) ¶ 7.) Plaintiffs were all working at the Refinery on the date of the explosion, as employees of independent contractors retained by Superior Refining to assist with the shut down. (*Id.* ¶¶ 6-7.) Specifically, at the time of the explosion, defendant had allegedly "plac[ed]" plaintiffs in or near the Refinery's fluid catalytic cracking unit ("FCCU"). (*Id.* ¶ 25.) Plaintiffs Fagan, Hagenah, and Jensen were employees of Brand Safway and engaged in the erecting of scaffolding in the FCCU. Plaintiff Thomas was employed by Stack Brothers Mechanical Contracting and engaged in welding an oxygen

2

gas supply line less than 100 yards from the FCCU.  Plaintiff Stephani was employed by Hunt Corporation, providing field electrical services less than 100 yards from the FCCU. (*Id.* ¶ 7.)  On April 26, 2018, and while plaintiffs were at the Refinery, a series of explosions occurred causing a large shockwave that hurled plaintiffs to the ground, severely injuring them.  (*Id.* ¶ 8.)

Plaintiffs allege that the explosion itself was caused by defendant's continued use of a worn valve that malfunctioned, allowing oxygen and hydrocarbon to mix within the Refinery and become flammable.  (*Id.* ¶¶ 8-9.)  This mixture then allegedly grew and ignited, causing the explosion. (*Id.* ¶ 9.)  Later that same day, the Chemical Safety and Hazard Investigation Board (the "CSB"), a federal agency that investigates accidental releases of chemicals, began investigating the explosion. (*Id.* ¶ 13.)  The CSB compiled information and issued a report about the explosion on August 2, 2018. (*Id.* ¶ 14.)

B.  **Procedural Background**

An earlier version of these same claims by largely the same group of plaintiffs was first filed in this court on June 5, 2019. *Fagan v. Superior Refinery Co., LLC*, ("*Fagan I*") 19-cv-462, (dkt. #1).  After this court issued an order requiring plaintiff to submit proof of diversity of citizenship, plaintiffs filed an amended complaint, *id.* (dkt. #5), and then a second amended complaint, *id.* (dkt. #10).  Defendant moved to dismiss plaintiffs' second amended complaint, *id.* (dkt. #15), which the court granted, *id.* (dkt. #34).  Although the claims were dismissed without prejudice, judgment was entered against plaintiffs and costs were awarded to defendant.  *Id.* (dkts. #35, 38.)  Three weeks later, plaintiffs filed this new lawsuit. *Fagan v. Superior Refinery Co., LLC*, 20-cv-685, (dkt. #1).  Defendant moved

3

to dismiss plaintiffs' complaint, arguing that it was deficient in largely the same was as their previously dismissed complaint. After this motion was fully briefed, plaintiffs moved to file an amended complaint.

## OPINION

Federal Rule of Civil Procedure 15(a)(2) states that courts "should freely give leave" to a party wishing to amend its pleadings "when justice so requires." *See Soltys v. Costello*, 520 F.3d 737, 742-43 (7th Cir. 2008) (discussing the standard). Accordingly, while a motion to amend is not automatically granted, a party will be allowed to amend its pleadings "[i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Whether to grant or deny leave to amend is within the discretion of the district court. *Id.*

Here, defendant objects to plaintiffs' motion to amend, arguing that it is futile and "a prejudicial and untimely attempt at gamesmanship." (Def.'s Opp'n (dkt. #24) 5, 7 (capitalization omitted).) The court is certainly sympathetic to defendant's frustration given their repeated, unsuccessful attempts in the past, but plaintiffs now appear to have stated a viable claim, and the principles of Rule 15 do not otherwise call for denying plaintiffs leave to amend.

### I. Delay, Bad Faith, Failure to Cure Deficiencies, and/or Prejudice

According to defendant, plaintiffs' "repeated failures" to correct the deficiencies in their original complaint warrant denial of any further amendment. (Def.'s Opp'n (dkt. #24) 5.) In particular, defendant notes that this is the fifth complaint plaintiffs seek to bring. However, as plaintiff points out, the effect of these previous complaints is mitigated by the fact that this is only the *first* amended complaint to be filed in the present case, since the three other complaints referenced by defendant were filed in a case previously dismissed without prejudice to refiling. Moreover, defendant was granted costs for litigating that case, further softening any alleged prejudice. And, as discussed in greater depth below, plaintiffs have finally been able to cure deficiencies previously identified by defendant and this court.

Defendant also argues that plaintiffs' motion was "filed in a manner that suggests gamesmanship or dilatory motives." (Def.'s Opp'n (dkt. #24) 6.) In particular, defendant notes that the amended complaint was filed only after defendant's motion to dismiss was under consideration by this court. (*Id.*) However, this timing is not evidence of bad faith or dilatory motive. On the contrary, plaintiffs credibly represent that they filed their amended complaint in part to correct flaws pointed out in defendant's reply brief in support of its motion to dismiss. (Pls.' Br. (dkt. #23) 2.) Of course, it would have been preferable if plaintiffs had eliminated these flaws on their own, but efforts to do so now that the defects have been spelled out does not indicate bad faith.

As for prejudice, "virtually every amendment of a complaint results in some degree of prejudice to a defendant. . . . Thus, it is not enough that a defendant will suffer prejudice

5

from the amendment; that prejudice must be undue." *Conroy Datsun Ltd. v. Nissan Motor Corp. in U.S.A.*, 506 F. Supp. 1051, 1054 (N.D. Ill. 1980). Among other circumstances, undue prejudice may be found where (1) the motion comes on the eve of trial, (2) the proposed amendment brings entirely new and separate claims or adds new parties, (3) witnesses have become unavailable for examination, or (4) the amendment would require expensive and time-consuming, new discovery. *See A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp.,* 68 F.R.D. 383, 385 (N.D. Ill. 1975) (citing cases). None of these situations are present here. Of course, defendant will shoulder some prejudice by having to defend yet another complaint, but this prejudice is not undue, and it is outweighed by plaintiffs' right to have their case determined on the merits.

**II. Futility**

Defendant next argues that plaintiffs' motion should be denied on grounds of futility. If a proposed, amended complaint could not withstand a motion to dismiss, a district court may deny leave to amend. *Glick v. Koenig*, 766 F.2d 265, 268 (7th Cir. 1985). When considering a motion to dismiss, however, the court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). As with their pending motion to dismiss plaintiffs' original complaint, defendant argues that the proposed amended complaint is futile on its face because: (1) plaintiffs' claims are barred because a principal employer is not liable in tort for injuries to an independent contractor's employee if sustained while performing the

6

contracted work; and (2) plaintiffs have failed to allege the essential elements of the claims they are pursuing.

As noted, the court has previously ruled on similar motions to dismiss arising out of the 2018 Refinery explosion. *See Bruzek*, 18-cv-697-wmc (dkt. #78); *Mayr,* 18-cv-917-wmc (dkt. #45); *Fagan I,* 19-cv-462-wmc (dkt. #34). In particular, the court permitted the plaintiffs in *Bruzek* and *Mayr* to proceed over motions to dismiss, while granting dismissal in *Fagan I* -- the latter primarily on the grounds that plaintiffs had failed to support their claims with specific factual allegations.

Notably, except for the vague allegations as to the specific circumstances surrounding plaintiffs' injuries, all of the facts alleged in the present complaint are materially *identical* to those alleged in *Mayr*. (*Compare* Proposed Am. Compl. (dkt. #22-1) ¶¶ 13-24; *with Mayr*, 18-cv-917-wmc, Am. Compl. (dkt. #4) ¶¶ 3.5-6.3.) Thus, for many of the reasons previously discussed in *Mayr*, the court concludes that plaintiffs' proposed amended complaint would survive a motion to dismiss.

A. **Principal Employer Liability**

As it did in *Fagan I*, defendant first argues plaintiffs' tort claims are barred by Wisconsin's rule of principal employer liability. Generally, that rule states that an individual or entity hired as an independent contractor (also known as the "principal employer") is "not liable in tort for injuries sustained by an independent contractor's employee while he or she is performing the contracted work." *Tatera v. FMC Corp.*, 2010 WI 90, ¶ 2 & n.4, 328 Wis. 2d 320, 786 N.W.2d 810. The source for this rule is found in the general principle of Wisconsin's worker's compensation regime: an injured

employee's right to recover worker's compensation benefits shall be the employee's *exclusive* remedy against his or her direct employer. *Id.* ¶ 16.

Notably, however, there are two recognized exceptions to this general rule. *Id.* ¶ 2. First, "[a] principal employer may be liable to an independent contractor's employee for injuries caused by the principal employer's affirmative act of negligence." *Id.* ¶ 22. Second, a principal employer may be held liable in tort for "injuries sustained by an independent contractor's employee while he or she is engaged in an extrahazardous activity." *Id.* ¶ 32.

"An extrahazardous activity is 'one in which the risk of harm remains unreasonably high no matter how carefully it is undertaken.'" *Id.* (quoting *Wagner v. Cont'l Cas. Co., a Div. of CNA Ins. Companies*, 143 Wis. 2d 379, 392, 421 N.W.2d 835, 840 (1988)). Moreover, in *Mayr*, this court explained that

> Based on the allegations in the complaint, the court cannot say as a matter of law that the work plaintiff had contracted to perform was not extrahazardous. (*See* Am. Compl. (dkt. #4) ¶¶ 3.3, 3.7 (describing plaintiff's work as "chemical clean up" at a refinery while the Fluid Catalytic Cracking Unit was being shut down).) This is *not* to hold that defendant Superior Refining's worker's compensation defense may not ultimately prevail, but rather that at present, plaintiff has pleaded sufficient facts to survive defendant's worker's compensation defense at the motion to dismiss stage. Discovery and later motion practice will give ample opportunity to explore the question further on a more fulsome record.

18-cv-917, at *4-5 (emphasis in original, footnote omitted).

In fairness, even though they involved the same underlying events, this court previously distinguished plaintiffs claims *Fagan I* from *Mayr* on the grounds that the plaintiffs provided only a conclusory statement that the work at the Refinery was extrahazardous without any underlying factual or precedential support. *Fagan I*, 19-cv-462

8

at *11.  However, plaintiffs have now incorporated the same material facts from the *Mayr* complaint that this court found adequate into their proposed amended complaint or alleged parallel facts given their particular circumstances (e.g., the nature of their contracted work).

As defendant points out, unlike the *Mayr* plaintiff, the plaintiffs here allege at various points that the explosion would not have occurred if defendant had not postponed inspecting and repairing the worn valve.  (*See* Proposed Am. Compl. (dkt. #22-1) ¶¶ 9, 10.) According to defendant, "because Plaintiffs alleged that Defendant could have taken actions to prevent the Incident, working in the Refinery could not, as a matter of law, have been ultrahazardous." (Def.'s Opp'n (dkt. #24) 8.)  While defendant's argument certainly has some force, plaintiffs' allegations are not necessarily fatal to their claim when read in the light most favorable to them.  Given the benefit of hindsight, most accidents or injuries might be avoided, and so plaintiffs' identification of defendant's key errors does not necessarily mean that the *nature* of the activity at issue is *not* extrahazardous.  Indeed, as defendant itself points out, in analyzing whether an activity is extrahazardous, Wisconsin courts "assess the relative danger of the underlying activity . . . not the resulting harm alleged by the plaintiffs." (Def.'s Reply (dkt. #19) 8 (citing *Grube v. Daun*, 213 Wis. 2d 533, 545, 570 N.W.2d 851, 857 (1997).)

Given plaintiffs' revisions, therefore, the court concludes that plaintiffs' have alleged sufficient facts to support their claimed exemption from the general rule of principal employer nonliability at least at the pleading stage.

### B. Plaintiffs' Claims

Even if the general rule of principal employer nonliability does not apply, defendant next argues that plaintiffs have failed to allege facts to support their claims. For the reasons discussed below, the court finds that plaintiffs have pled sufficient facts in the proposed amended complaint to support each of their three claims.

#### 1. Negligence

Under Wisconsin law, a negligence claim involves four elements: "(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the [breach]." *Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 302, 717 N.W.2d 17, 27 (quoting *Gritzner v. Michael R.*, 2000 WI 68, ¶ 19, 235 Wis. 2d 781, 790, 611 N.W.2d 906, 912). A defendant owes plaintiff a duty of ordinary care in Wisconsin to act as a reasonable person would in similar circumstances. *See Gritzner*, 2000 WI 68, ¶ 22. Thus, "[i]f a person, without intending to do harm, acts, or fails to do an act, that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property, he or she is not exercising ordinary care under the circumstances." *Hoida, Inc.*, 2006 WI 69, ¶ 23. As for causation, a plaintiff must prove "that the defendant's negligence was a substantial factor in causing the plaintiff's harm." *Ehlinger by Ehlinger v. Sipes*, 155 Wis. 2d 1, 12, 454 N.W.2d 754 (1990).

Defendants argue that plaintiffs have failed to sufficiently allege a breach of duty causing harm. (Defs.' Opp'n (dkt. #24) 11; Def.'s Br. (dkt. #10) 15-18.) In *Mayr*, however, the court rejected nearly identical arguments, holding that:

> At least as pleaded, the use of a defective valve, despite its worn nature and the foreseeable consequences of that wear given the potentially dangerous gases involved, could have fallen outside what a reasonable person would have done if operating the Refinery, or at least a reasonable trier of fact might so infer. Taken as true, therefore, plaintiff's allegations constitute a plausible breach of duty by defendant in the continued use of the deficient valve.
>
> Plaintiff has also plausibly alleged causation because, according to the complaint, the use of the valve was a substantial factor in creating the flammable mixture that caused both the explosion and plaintiff's resulting injuries.

*Mayr*, 18-cv-917 at *5-6.

This same holding applies with equal force here. If anything, plaintiffs' proposed amended complaint alleges more detailed facts than found legally sufficient in *Mayr*, including alleging that: (1) defendant's records showed that repair and maintenance on the worn valve was overdue; and (2) citing to a similar explosion at a different refinery that occurred in 2015 of which defendant had been aware. (*See* Proposed Am. Compl. (dkt. #22-1) ¶¶ 9, 10.) Accordingly, plaintiffs have adequately alleged a claim of negligence against defendant.

### 2. Extrahazardous Activity

Wisconsin law also imposes strict liability on those engaging in "extrahazardous" or "abnormally dangerous" activities when doing so results in harm to another.[2] *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 667-68, 476 N.W.2d 593 (Ct. App. 1991). For purposes of strict liability, whether an activity qualifies as extrahazardous is determined by considering a number of factors set forth in the Restatement (Second) of Torts, "including the degree of risk, the likelihood of harm, the ability to eliminate the risk with the exercise of reasonable care, and the value of the activity to the community, among other factors." *Liebhart v. SPX Corp.*, No. 16-cv-700-jdp, 2017 WL 5054730, at *4-*5 (W.D. Wis. Nov 2, 2017) (citing *Fortier*, 164 Wis. 2d at 667-68).

As previously explained, while a determination normally made by the court as a matter of law, it must do so "in light of the facts presented to the court." *Ind. Harbor Belt R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1176 (7th Cir. 1990) (citing Restatement (Second) Torts § 520, cmt. *l* (Am. Law Inst. 1977)). Accordingly, this court has previously deferred determining whether an activity qualifies as extrahzardous until after discovery. *See Liebhart*, 2017 WL 5054730, at *5 ("Defendants may be correct that that the activity at issue in this case is not abnormally dangerous under Wisconsin law, but that issue should be decided in the context of a developed record rather than on a motion to dismiss, so the court will deny SPX's motion as to this claim.").

---

[2] "The terms 'extrahazardous' and 'abnormally dangerous' are used synonymously in Wisconsin." *Estate of Thompson v. Jump River Elec. Co-op.*, 225 Wis. 2d 588, 595 n.5, 593 N.W.2d 901 (Ct. App. 1999).

As this court noted in *Fagan I*, other courts outside of Wisconsin have concluded that various activities related to the operation of oil refineries are not extrahazardous. *See Fagan I*, 19-cv-462 at *9 (citing *Flanagan v. Ethyl Corp.*, 390 F.2d 30 (3d Cir. 1968) (the work of filling an oil tank at a refinery when an explosion occurred, killing the worker, was a matter of common usage and not ultrahazardous); *Hall v. Amoco Oil Co.*, 617 F. Supp. 111, 112 (S.D. Tex. 1984) ("the Court concludes that the operation of an oil refinery in an industrial community . . . does not constitute an ultrahazardous activity"); *Roach v. Air Liquide America, LP*, Case No. 2:12-3165, 2013 WL 3148627 (W.D. La. 2013) (painting and sandblasting tanks at a refinery was not an ultrahazardous activity)).

Still, notwithstanding defendant's argument to do so here (Defs.' Opp'n (dkt. #24) 11; Def.'s Br. (dkt. #10) 18-20), no court applying Wisconsin law has formally declared as a matter of law that oil refinery operations are *not* extrahazardous. On the contrary, this court held in *Mayr* that plaintiff had stated a claim sufficient to survive a motion to dismiss based on similar allegations of extrahazardous activity:

> At present, the court is distinctly ill-informed to engage in this inquiry, much less undertake to balance the relevant factors to determine if operating a refinery like that at issue here constitutes an extrahazardous activity under Wisconsin law. While operating a refinery containing combustible chemicals may very well *not* merit strict liability under Wisconsin law, the court cannot say for certain without a developed evidentiary record. . . . Moreover, defendants have cited no case law holding that the operation of a refinery is *not* extrahazardous as a matter of law. Finally, whether defendants' activities qualify as extrahazardous will certainly be better answered within the context of a developed evidentiary record following discovery.

*Mayr*, 18-cv-917 at *7 (internal citations omitted, emphasis in original).  So, too, here.  Thus, the court concludes that plaintiffs' strict liability claim survives a motion to dismiss and is not futile as pleaded.

### 3. Safe Place Statute

Last, plaintiffs' claim a violation of Wisconsin's safe place statute.  This statute requires every employer and owner of a public building to provide a safe place for frequent visitors *and* to "repair or maintain such" a public building so as to render it safe.  Wis. Stat. § 101.11(1).  Moreover, the owner or employer is liable for both structural defects and unsafe conditions associated with the building.  *Rosario v. Acuity & Oliver Adjustment Co.*, 2007 WI App 194, ¶ 11, 304 Wis. 2d 713, 722, 738 N.W.2d 608, 612.

If the claim is based on a "structural defect," the owner or employer is "liable under the statute regardless of whether it had notice of the defect."  *Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶ 1, 245 Wis. 2d 560, 564, 630 N.W.2d 517, 519.

Alternatively, if the claim is based on an "unsafe condition associated with the structure," then the owner or employer must have "actual or constructive notice of the defect" to be found liable under Wisconsin law.  *Rosario*, 2007 WI App ¶ 12.  "An unsafe condition associated with the structure arises when an originally safe structure is not properly repaired or maintained."  *Id.*  For example, a defect in "light or paint color or a lack of warnings could be considered unsafe conditions associated with the structure."  *Id.* (quoting *Mair v. Trollhaugen Ski Resort*, 2006 WI 61, ¶ 12, 291 Wis. 2d 132, 142, 715 N.W.2d 598, 603).

Again, plaintiffs' proposed amended complaint plausibly alleges that defendant's deferred maintenance of the worn SCSV created an unsafe condition associated with the structure. The complaint further alleges that Superior Refining knew or should have known about the unsafe condition. For example, the complaint alleges that defendant's own records showed maintenance for the SCSV was overdue. Thus, plaintiffs have stated a plausible claim under the safe place statute.

### III. Motion to Intervene

Finally, before the court is an unopposed motion to intervene by Travelers Indemnity Company of Connecticut to assert a claim for subrogation with respect to any damage award. (Dkt. #29.) The court will grant this motion, subject to the intervenor abiding by the schedule established by the principal parties in suit.

### ORDER

IT IS ORDERED that:

1) Defendant's motion to dismiss (dkt. #9) is DENIED.

2) Plaintiffs' motion to amend (dkt. #22) is GRANTED.

3) Travelers Indemnity Company of Connecticut's motion to intervene (dkt. #29) is GRANTED. It is instructed to refile its complaint pursuant to this court's electronic filing procedures Section III.C. The parties have 21 days to file their response to Travelers Indemnity Company of Connecticut's complaint.

Entered this 1st day of April, 2021.

BY THE COURT:

_____

15

        WILLIAM M. CONLEY
        District Judge